NO. 07-10-0136-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 

AUGUST 29, 2011

 

______________________________

 

 

WILLIAM KELLY WOODALL, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

_________________________________

 

FROM THE 66TH DISTRICT COURT OF HILL
COUNTY;[1]

 

NO. 35,897; HONORABLE F. B. (BOB) MCGREGOR, JR., JUDGE

_______________________________

 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

OPINION

            This appeal involves an analysis of
the limits to which a trial court can go during voir dire in order to insure that a fair and impartial jury is
selected in a criminal case where the only issue is punishment.  By one indictment, Appellant, William Kelly Woodall,
was charged with two counts of aggravated sexual assault of a child,[2]
six counts of indecency with a child[3] and
two counts of sexual assault of a child.[4]  Ultimately, he pleaded "no contest"
to all ten counts; however, prior to the commencement of trial, he filed an Application for Probation.[5]  Because
he could not receive community supervision from the court,[6]
Appellant chose to have a jury assess his punishment.  Appellant now presents four issues, all
directed to the jury selection process. 
Finding no error, we affirm.

Background Facts

            The facts flowing from
Appellant's pleas of no contest are minimal. 
Appellant is the complainant's stepfather.  According to the complainant, who was sixteen
years old at the time of trial in 2010, Appellant began sexually abusing her
when she was six or seven years old.[7]  She testified that Appellant acted
inappropriately approximately fifty times.[8]  She eventually confided in her two best
friends who in turn confided in their parents. 
One of those parents broke the news to the complainant's mother in April
2009.  After the complainant and her
mother spoke about the abuse, the mother reported it to the sheriff's
department.

            At trial, after being
admonished by the trial judge as to the consequences of his pleas, Appellant
entered a plea of "no contest" to each count and the State introduced
a written stipulation of evidence.  Based
upon his plea and the stipulated evidence, the judge found the allegations in
each count of the indictment to be true and adjudicated him guilty on all
counts. The case proceeded to jury selection. 
 

            Shortly after
qualification of the jury panel, it came to the judge's attention that the complainant's
grandfather was a member of the jury panel. 
He was excused by agreement without any further discussion.  The judge proceeded to explain to the jury
panel the range of punishment for the offenses on trial and the requirement
that every juror selected must to be able to consider the full range of
punishment, including community supervision. 
Although individual responses were not recorded, the judge later indicated
that the jury panel, as a whole, expressed an ability to follow those
instructions.  Following the trial
court's general instructions, both the State and Appellant had an opportunity
to question the jury panel.  During Appellant's
voir dire, his defense counsel repeatedly
asked individual panel members whether or not they could consider community
supervision.  At least twenty-three
jurors stated that they could not consider community supervision in a case
involving aggravated sexual assault of a child. 
No contemporaneous challenges for cause were made.  At the conclusion of voir dire, the judge asked counsel if they had any challenges for
cause.  The State had none, but the
defense challenged the twenty-three prospective jurors "based on the fact
that they cannot consider probation in a case involving aggravated sexual
assault of a child."  The judge then
summoned each challenged juror individually to the bench for further questioning
by the court.  After discussing a
hypothetical aggravated sexual assault involving consensual sex between a
seventeen year old and a thirteen year old, the judge then asked each juror a
rehabilitation question.  Based upon
their responses, the judge granted ten challenges for cause, overruled eleven
challenges for cause, and never ruled on two challenges for cause.  Defense counsel's request for additional
peremptory challenges was denied.  A jury
was seated and following the presentation of punishment evidence, that jury
assessed ten separate sentences as follows: sixty years confinement for the two
counts of aggravated sexual assault, twenty years confinement for the six counts
of indecency with a child and twenty years confinement for the two counts of
sexual assault.  The trial judge ordered
the sentences to be served concurrently. 

            Appellant presents four
issues concerning alleged errors committed during voir dire.  Specifically, he
contends (1) the trial judge abused his discretion by abandoning his role as
magistrate and assuming the role of an advocate for the State by actively
attempting to rehabilitate challenged prospective jurors; (2) the trial judge
committed reversible error by denying his challenges for cause; (3) the trial judge
committed reversible error by asking prospective jurors impermissible
"commitment" questions; and (4) the trial judge erred in failing to
quash the jury panel based on the presence of the complainant's grandfather on
that panel. 

Standard of Review

            It is a well-established principle
that the conduct of voir dire rests largely
within the sound discretion of the trial judge.  Woods v. State, 152 S.W.3d 105, 108
(Tex.Crim.App. 2004), cert. denied, 544 U.S. 1050, 125 S.Ct. 2295, 161
L.Ed.2d 1092 (2005); Martinez v. State,
867 S.W.2d 30, 35 (Tex.Crim.App. 1993).  The appropriate standard of review is
whether the trial judge abused that discretion; Boyd v. State, 811
S.W.2d 105, 115-116 (Tex.Crim.App.), cert. denied, 502 U.S. 971, 112
S.Ct. 448, 116 L.Ed.2d 466 (1991), and A[t]he
appropriate standard of harm is to disregard the error unless a substantial
right has been affected.@  Woods, 152 S.W.3d at
109.  AA
substantial right is affected when the error has a substantial and injurious
effect or influence in determining the jury=s
verdict.@  Id. at 109-110.  

            Appellate review
of a trial judge's decision to grant or deny a challenge for cause is deferential to the
trial judge due to his or her superior position in evaluating a prospective
juror's demeanor and responses, as well as the context and tone in which
questions were asked and answered.  See Rachal v. State, 917 S.W.2d 799, 810
(Tex.Crim.App. 1996).  See also Bell v. State, 233 S.W.3d 583, 590 (Tex.App.--Waco 2007, pet.
ref'd).  Accordingly, a trial judge's
ruling on a challenge for cause will be reversed only if a clear abuse of
discretion is evident.  Russeau v. State, 171 S.W.3d
871, 879 (Tex.Crim.App. 2005). 

            When a prospective juror's
answers are vacillating, unclear or even contradictory, we accord great
deference to the trial judge who had the better opportunity to see and hear the
prospective juror.  Swearingen v. State, 101 S.W.3d 88, 99
(Tex.Crim.App. 2003).  Furthermore, the entire
voir dire record is reviewed to
determine whether the trial judge had a rational basis for his or her
conclusions.  Granados v. State, 85 S.W.3d 217, 229
(Tex.Crim.App. 2002); Bell, 233
S.W.3d at 590.  

Issue One - Questioning
by the Court

            Appellant contends the
trial judge abused his discretion by personally questioning prospective jurors
who asserted they would not be able to consider the full range of punishment.  To preserve a complaint for appellate review,
the record must show that the complaint was made known to the trial judge by a
timely request, objection, or motion that states the grounds for the complaint
with sufficient specificity to make the judge aware of the complaint, unless
the grounds are apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691-92
(Tex.Crim.App. 2009).  No objection was
made by Appellant's counsel that the trial court erred in any way by personally
questioning prospective jurors.  By
failing to present this objection at trial, Appellant failed to preserve the
issue for review. 

            That said, a trial judge has the inherent authority to question
prospective jurors regarding their qualifications and ability to serve as fair
and impartial jurors.  In Gardner v. State, 733 S.W.2d 195, 210
(Tex.Crim.App. 1987), the appellant argued it was reversible error for the
trial court to question prospective jurors beyond initial questioning regarding
points of law.  In disagreeing, the Texas
Court of Criminal Appeals examined article 35.16(a) and determined it did not
prohibit additional questioning by the trial court and it would not infer such
a prohibition.  Id.  The Court noted that it
has implicitly approved such a practice "time and time again."  Id.  Thus, a trial court may intervene by
asking questions during voir dire for
the purpose of clarification and expedition. 
Id.  Only when a trial court's questions or comments
are reasonably calculated to benefit the State or prejudice the defendant will
reversible error occur.  Id.  Accordingly,
issue one is overruled. 

Issue Two - Denial of
Challenges for Cause

            By his second issue,
Appellant contends the trial judge erred in denying various challenges for
cause because the complained of prospective jurors were biased[9]
because they could not consider the full range of punishment, specifically the
possibility of community supervision.  A
defendant may challenge a prospective juror for cause whenever that juror has a
bias or prejudice against any phase of the law applicable to the case upon
which that defendant is entitled to rely. 
Cardenas v.
State, 325 S.W.3d 179, 184-85 (Tex.Crim.App. 2010).  In such circumstances, the test is whether
the bias or prejudice would prevent or substantially impair the prospective
juror's ability to fully follow the law as set out in the trial court's
instructions and as required by the juror's oath.  Swearingen,
101 S.W.3d at 99; Feldman v. State, 71
S.W.3d 738, 744 (Tex.Crim.App. 2002).  The
laws pertaining to punishment, including community supervision, are laws upon
which a defendant is entitled to rely.  Tex. Code Crim. Proc. Ann. art. 35.16(c)(2)
(West 2006).  Therefore, once a
prospective juror admits an inability to consider the full range of punishment,
including community supervision, a sufficient foundation has been laid to
support a challenge for cause.  Cumbo v. State, 760
S.W.2d 251, 255-56 (Tex.Crim.App. 1998). 


            As the State suggests,
Appellant focuses solely on the prospective jurors' negative answers.  As a reviewing court, we examine jury
selection in its entirety, not just in a vacuum, to determine whether the trial
court's conclusions were warranted.  See Granados, 85
S.W.3d at 229.  See also Howard v. State, 941 S.W.2d
102, 107-08 (Tex.Crim.App. 1996). 
Before a prospective juror can be challenged under article 35.16, the
law must be explained to the prospective juror and he or she must be asked
whether they can follow the law regardless of their personal views.  Jones
v. State, 982 S.W.2d 386, 390 (Tex.Crim.App. 1998).  The proponent of a challenge for cause has
the burden to show that the challenge was proper.  Feldman,
71 S.W.3d at 747.  Accordingly, in
such circumstances, the proponent does not meet that burden until the record
shows that the prospective juror understood the requirements of the law and
could not overcome any bias or prejudice. 
Id.  In ruling upon such a challenge for cause
based upon the inability of a prospective juror to consider community
supervision, the trial judge is deserving of great deference because he or she
is in a superior position to evaluate both the prospective juror's demeanor and
responses, as well as the context and tone in which questions were asked and
the responses given.  Rachal, 917 S.W.2d at
810.   

            Here, the trial court was faced with
a situation where the prospective jurors had previously stated an ability to
follow the law, but were now being challenged based upon their response to
defense counsel's repeatedly asked question, "Can you consider probation
on a case when someone is convicted of aggravated sexual assault of a child?" (Emphasis added).  Defense counsel never fully explained the
applicable law, nor did he ask prospective jurors whether they could set aside
their personal convictions and follow the law. 
Based upon the trial judge's earlier admonishments[10]
and the hypothetical presented, several challenged jurors stated that they
could set aside their personal convictions and consider the full range of
punishment.  As to those jurors, Appellant's
challenges for cause were denied.  The
jurors who persisted in asserting that they could not set aside their
previously stated bias were excused.[11]  Faced with contradictory responses from the
prospective jurors, under the circumstances of this case, we cannot say that
the trial judge clearly abused his discretion in denying Appellant's challenges
for cause.  Issue two is overruled.

Issue Three -
Commitment Questions 

            By his third issue, Appellant
vehemently contends the trial court committed reversible error by impermissibly
asking the jury panel "commitment questions" on whether they would be
able to consider the full range of punishment for the crimes to which Appellant
had plead "no contest."  Appellant
contends the trial court's line of questioning prevented a fair and impartial
jury from being seated.  We disagree.

            A commitment question is
a question that commits a prospective juror to resolve or refrain from
resolving an issue a certain way after learning a particular fact.  Davis
v. State, ___ S.W.3d ___, No. PD-1400-10, 2011 Tex. Crim.
App. LEXIS 416, at *2
 (Tex.Crim.App.
2011); Standefer v. State, 59 S.W.3d
177, 179 (Tex.Crim.App. 2001). 
Such questions are often designed to elicit a "yes" or
"no" answer in which one or both of the possible answers commits the
jury to resolving an issue a certain way. 
Standefer, 59 S.W.2d at 179.  Not
all commitment questions are improper.  Id. at 181.  For a commitment question to be proper, one
of the possible answers to that question must give rise to a challenge for
cause.  Id. at 182.  Even if the
question meets this challenge for cause requirement, "the question may
nevertheless be improper if it includes facts in addition to those necessary to establish a challenge for cause."  Id.  To be proper a commitment question must
contain only those facts necessary to
test whether a prospective juror is challengeable for cause.  Id.  (Emphasis in original).

            As voir dire progressed, numerous prospective jurors vacillated on
their ability to consider the full range of punishment, in particular community
supervision, in a case involving sexual crimes against a child.  After Appellant challenged the twenty-three
prospective jurors who indicated that they could not consider community
supervision in such a case, the trial court intervened and questioned them as
to whether they could consider community supervision for the category of
offense charged in a situation where the accused was seventeen years old and
the victim was under age fourteen, but the sexual encounter was
consensual.  Based upon their responses,
the judge granted ten challenges for cause, overruled eleven challenges for
cause, and never ruled on two challenges for cause.  Defense counsel then requested but was
denied twenty-two additional peremptory strikes.

            Appellant relies on Barajas v. State, 93 S.W.3d 36, 40
(Tex.Crim.App. 2002), and Freeman v.
State, 74 S.W.3d 913, 916 (Tex.App.--Amarillo 2002 pet. ref'd).  In Barajas,
an indecency with a child case, defense counsel asked prospective jurors if
they could be fair and impartial in a case in which the victim was nine years
old.  The trial court did not permit the
question and review was granted to determine whether the trial court abused its
discretion.  The Court concluded the
question was too vague to be a proper question and found no abuse of
discretion.  

            In Freeman, which was remanded from the Texas Court of Criminal
Appeals for consideration under Standefer, this
Court affirmed the trial court's refusal to allow defense counsel in a murder
trial to question prospective jurors as to the possible effect on their verdict
if the victim was a two-week old child.  We
concluded that under the test in Standefer, the question called for potential
jurors to commit to resolve or refrain from resolving an issue a certain way
after learning of a particular fact.  Freeman, 74 S.W.3d at 915-16.

            We find Barajas and Freeman to be inapposite because neither case involved questioning
by the trial court and both cases involved questions that injected facts specific
to that particular case - two circumstances not present in this case.  Appellant has not cited us to any authority,
and we have found none, in which the trial judge committed reversible error by questioning
prospective jurors, in an attempt to rehabilitate them, by using a hypothetical
question not specific to the facts of that particular case.  See Tex.
R. App. P. 38.1(i). 
In the underlying case, the question posed by the trial judge to the
challenged prospective jurors was not intended to commit them to resolve or
refrain from resolving the issue of punishment a certain way after learning a
particular fact relevant to this case. 
The hypothetical question posed by the trial judge merely clarified for
the jury the broad range of potential facts that could constitute the offense
charged, to-wit: aggravated sexual assault. 
Appellant has not shown that the trial court's questioning was intended
to nor actually did benefit the State or prejudice him.  Under the facts of this case, we conclude the
trial judge did not err in questioning prospective jurors on whether they could
consider the full range of punishment.  Issue
three is overruled.




 

Issue Four -
Complainant's Grandfather on Panel

By his fourth and final argument, Appellant maintains the
trial court erred in failing to quash the entire jury panel based on the
presence of the complainant's grandfather on that panel.  According to Appellant's brief, his mere
presence on the jury panel constituted an unacceptable risk that other jurors
would be prejudiced against him to the extent that he would be deprived of a
fair trial.  We disagree.  

According to the record, defense counsel made the trial court
aware that the complainant's grandfather was on the panel and asked for an
admonishment that the panel not discuss the case with anyone.  The requested admonishment was given and prior
to voir dire by counsel, the complainant's
grandfather was excused by agreement. 
Appellant argues that a prospective juror who was ultimately selected to
serve as a petit juror was seated next to the complainant's grandfather during voir dire and that her presence tainted
the entire jury panel.  No request to
quash the jury panel was ever made.  

This Court has reviewed the entire jury selection process and
we disagree with Appellant for two reasons. 
First, Appellant's argument is based, in part, upon a post-trial conversation
his counsel allegedly had with the objectionable juror.  That conversation is outside the record and we
are restrained to the trial court record when reviewing a direct appeal.  See
Parks v. State, 473 S.W.2d 32, 33 (Tex.Crim.App. 1971) (holding that a complaint
about jury selection relying upon factors outside the record would not be
considered on appeal).   Second,
even if some evidence of an objectionable influence on the jury panel appeared
of record, Appellant did not preserve his complaint by requesting the trial
court to quash the jury panel or otherwise bring the matter to the trial court's
attention.  See Tex. R. App. P. 33.1(a). 
Appellant's failure to develop the record and preserve the complaint for
appellate review leaves this Court with no alternative but to overrule his fourth
issue.

Conclusion

            Having overruled
Appellant's four issues, the trial court's judgment is affirmed.

 

                                                                                    Patrick A. Pirtle

                                                                                           Justice

 

 

Publish. 











[1]Originally
appealed to the Tenth Court of Appeals (Waco), this appeal was transferred to
this Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  Tex. Gov=t
Code Ann. ' 73.001 (West 2005).  We are unaware of any conflict between
precedent of the Tenth Court of Appeals and that of this Court on any relevant
issue.  Tex. R. App. P. 41.3.

 





[2]Tex.
Penal Code Ann. § 22.021(a)(1)(B)(i)
(West Supp. 2010).  An offense under this
section is a felony of the first degree.

 





[3]Tex.
Penal Code Ann. § 21.11(a)(1) (West Supp. 2010).  An offense under this section is a felony of
the second degree.

 





[4]Tex.
Penal Code Ann. § 22.011(a)(2) (West Supp. 2010).  An offense under this section is a felony of
the second degree.

 





[5]A
jury may grant community supervision to an otherwise eligible defendant only if
before trial the defendant files a written sworn motion averring that he has
not previously been convicted of a felony in this or any other state.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 4(e) (West Supp. 2010).  In this
case, the record reflects that Appellant filed an application which stated in toto:
"Now comes William Kelly Woodall, the Defendant herein, and asks the court
to consider his Application for Probated Sentence."

 





[6]A
judge may not suspend the imposition of sentence and place a defendant on
community supervision upon conviction of an offense under §§ 21.11(a)(1), 22.011, or 22.021 of the Texas Penal Code.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g (West Supp. 2010).

 





[7]Accusations
in the indictment only date back to July 1, 2007, when the complainant was
approximately thirteen years old.  By his
voluntary statement given on April 13, 2009, Appellant provided that the abuse
began two and a half years earlier.  

 





[8]In
his voluntary statement, Appellant admitted forty to fifty occurrences of
inappropriate conduct.





[9]In
support of his argument, Appellant relies on, among other intermediate
appellate court decisions, State v. Dick,
69 S.W.3d 612, 620 (Tex.App.--Tyler 2001, no pet.), and Gum v. Schafer, 683 S.W.2d 803, 808 (Tex.App.--Corpus Christi 1984,
no writ), for the proposition that a biased prospective juror cannot be
rehabilitated.  However, both Dick and Gum were overruled for that proposition in Cortez ex rel. Estate of Puentes v. HCCI-San
Antonio, Inc., 159 S.W.3d 87,
91-92, n.2 (Tex. 2005).





[10]In the
instant case, prior to commencement of voir
dire examination by counsel, the trial judge instructed the jury, "[y]ou must be able to consider the full range of punishment
all the way from probation to the maximum amount that the law would require . .
. ."  The court reiterated the
instruction as follows:

[b]ut you must be -- and you must be able to consider a situation
-- not necessarily this situation, but for the category of offense, you must be
able to consider the full range of punishment from the minimum, however
fleeting, to the maximum, however fleeting. 
In other words, you have to at least be able to consider it . . . .  It's just a matter of whether you can
consider, however fleeting, the total range of
punishment.

The judge emphasized the instruction a third time before asking
the panel if there was anyone who could not follow the law.  No one responded and the judge made the
statement "this jury has all said they can follow the law and can follow
the Court's instructions."





[11]The
only prospective juror to be seated on the jury who vacillated on her ability
to consider the full range of punishment was D. Shaw who, after questioning by
the trial court, stated, "I think I could be unbiased."